A95A1072. OKEKPE v. COMMERCE FUNDING CORPORATION.

(463 SE2d 23)

SMITH, Judge.

This is a direct appeal from the denial of a motion to dismiss appellee's filing of a foreign judgment under the Uniform Enforcement of Foreign Judgments Law, OCGA § 9-12-130 et seq. That law applies only to foreign judgments of other states that have adopted

the uniform act in substantially the same form as Georgia. OCGA § 9-12-138. When it applies, however, "[a]ny litigation ensuing is limited to that which is afforded any other Georgia judgment. OCGA § 9-12-132." *Eastlawn Corp. v. Bankers Equip. Leasing Co.*, 211 Ga. App. 551, 555 (1) (439 SE2d 753) (1993) (Beasley, P. J., dissenting).

OCGA § 9-12-132 provides: "A copy of any foreign judgment authenticated in accordance with an act of Congress or statutes of this state may be filed in the office of the clerk of any court of competent jurisdiction of this state. The clerk shall treat the foreign judgment in the same manner as a judgment of the court in which the foreign judgment is filed. A filed foreign judgment has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying as a judgment of the court in which it is filed and may be enforced or satisfied in like manner."

It is therefore clear that the denial of a motion to set aside a judgment filed under OCGA § 9-12-130 et seq. should be treated no differently for appeal purposes than any other judgment. See generally *Eastlawn Corp.*, supra; *Agency Mgmt. Svcs. v. Escape Travel/Tour Svcs.*, 199 Ga. App. 882, 883 (1) (406 SE2d 285) (1991).

In substance, this is an appeal from the denial of Okekpe's motion for relief from a foreign judgment rendered in Virginia based on that state's lack of personal jurisdiction, OCGA § 9-11-60 (d) (1); it is therefore subject to the discretionary appeal statute, OCGA § 5-6-35 (a) (8). See generally *Rebich v. Miles*, 264 Ga. 467, 468 (448 SE2d 192) (1994) ("'underlying subject matter'" is dispositive under OCGA § 5-6-35 (a) even when a particular judgment or order "is procedurally subject to a direct appeal under OCGA § 5-6-34 (a)"). Any rule to the contrary that may have been implied in the following cases is expressly disapproved. *Kaylor v. Turner*, 210 Ga. App. 2 (435 SE2d 233) (1993); *Arnold v. Brundidge Banking Co.*, 209 Ga. App. 278 (433 SE2d 388) (1993); *O'Quinn v. Southeast Radio Corp.*, 190 Ga. App. 608 (380 SE2d 487) (1989); *Sanders v. S. D. Leasing*, 189 Ga. App. 409 (376 SE2d 420) (1988).

When the discretionary appeal statute is applicable to the subject matter of the case, only a notice of appeal properly filed under OCGA § 5-6-35 (g) is sufficient "to secure a review of the issues" presented. Id. Since no proper notice of appeal has been filed in accordance with the mandatory procedure for discretionary review of the subject matter of this case, it must be dismissed.

*Appeal dismissed. McMurray, P. J., Birdsong, P. J., Pope, P. J., Andrews, Johnson, Blackburn and Ruffin, JJ., concur. Beasley, C. J., concurs specially.*

BEASLEY, Chief Judge, concurring specially.

The majority opinion expressly disapproves any rule that may have been implied, in several cases, contrary to the holding in this case. The holding is that an appeal from a denial of what was in effect a motion under OCGA § 9-11-60 (d) (1) to set aside a domesticated judgment needs the court's approval pursuant to the discretionary appeal procedure. OCGA § 5-6-35 (a) (8). I totally agree that the direct appeal in this case must be dismissed for failure to follow that procedure. Appellant attempts to directly appeal from what amounts to a denial of a motion to set aside a foreign judgment which has been filed for enforcement in this state, and Georgia appellate procedure requires that permission first be obtained for appeals from denials of motions to set aside judgments. I depart from the disapproval of four earlier opinions.

1. *O'Quinn v. Southeast Radio Corp.*, 190 Ga. App. 608 (380 SE2d 487) (1989) was appealed the right way, as a matter of appellate procedure, because it was an appeal from the grant of plaintiff's motion for summary judgment. There is a right to a direct appeal from a grant of summary judgment even when it does not resolve the entire case. OCGA § 9-11-56 (h). *O'Quinn* did not involve a motion to set aside a judgment under the post-judgment remedies statute, OCGA § 9-11-60. Thus, *O'Quinn* does not imply that a direct appeal may be taken from a denial of such a motion.

It does appear that *O'Quinn* was in error in referring to Southeast Radio Corporation's action as one under OCGA § 9-12-130. From the fact that the trial court entertained a motion for summary judgment, and Southeast did not challenge the employment of such a motion, I conclude that Southeast's action was not the expeditious process provided by the 1986 Uniform Enforcement of Foreign Judgments Law but rather the cumbersome pre-1986 process which the Uniform Act still allows the creditor the option of using. OCGA § 9-12-136. We should have noted that summary judgment is not available in proceedings under the Uniform Enforcement of Foreign Judgments Law, because motions for summary judgment under OCGA § 9-11-56 are *pre*-judgment devices to resolve a civil dispute, prior to trial, by reference to the record and the evidence of record.

*A.A.A., Inc. v. Lindberg*, 172 Ga. App. 753 (324 SE2d 480) (1984), which was decided before the enactment of the Uniform Law, illustrates the use of this alternate, traditional action which survives the enactment. The creditor was obliged to file a complaint to domesticate its foreign judgment and follow the procedure provided by the Civil Practice Act in obtaining any judgment. Thus it was subject to a defense, and a motion for summary judgment was available to dispose of it. Both parties filed motions for summary judgment, and the court granted that of the plaintiff/judgment creditor. Had both motions

been denied, there would have been a trial on the contested issue of the foreign court's jurisdiction. This lengthy collateral action is the very kind of process that the Uniform Law was intended to avoid.[1]

2. *Sanders v. S. D. Leasing*, 189 Ga. App. 409 (376 SE2d 420) (1988), also does not imply that direct, rather than discretionary, appeal lies from a ruling on a debtor's post-judgment motion to set aside a judgment under OCGA § 9-11-60. Since the creditor *did* try to follow the Uniform Law rather than the traditional procedure in that case, it did not have to file a motion for summary judgment because OCGA § 9-12-132 provides that the mere *filing* of an authenticated foreign judgment with the clerk gives it the force and effect of a domestic judgment. The debtor tried to challenge the foreign court's jurisdiction merely in a response to the motion for summary judgment, but this court correctly ruled that such a challenge would have to be by motion to set aside the already domesticated judgment. The direct appeal was properly before us because the trial court had granted the judgment creditor's motion; the debtor was not appealing from any denial of a motion to set aside; he never made one. (The trial court should actually have just dismissed the motion for summary judgment as it was unnecessary.)

If *Sanders* had involved the traditional complaint procedure for domesticating a foreign judgment, then defending against the creditor/plaintiff's motion for summary judgment *was* proper and that part of this court's opinion would be incorrect. The defendant would not have to await the final judgment against him in such an action and then try to set it aside under OCGA § 9-11-60 (d); in fact, that would probably be deemed too late, as he had opportunity to do so before judgment was reached under that procedure. OCGA § 9-11-12 (b) (2). The court expressly left open the question of whether a direct proceeding under OCGA § 9-11-60 could be brought on the filed foreign judgment: "Whether the 'court of rendition' is Arkansas, or, under OCGA § 9-12-132, may be deemed to be Georgia, a direct attack was not made in this case." Id. at 410. What we did not say in that case and should have said however, even though it was not a raised issue, is that a motion for summary judgment is not proper. There it was filed by the plaintiff/appellee and granted. Even though a motion for summary judgment was not a proper way for plaintiff to proceed to enforce the domesticated judgment, we had jurisdiction of

---

[1] Of course, if the motion had been one to set aside the judgment after it finally became domesticated, it still would have been a direct appeal because rulings on such motions were not at that time subject to the discretionary appeal procedure. OCGA § 5-6-35 was enlarged to include such rulings effective July 1, 1984, and *A.A.A.'s* appeal would have been taken some months before, as the decision of the Court of Appeals was October 16. *A.A.A.*, supra at 756.

the direct appeal because it still was an appeal from the grant of summary judgment to plaintiff. OCGA § 5-6-34 (a) (1).

There was no motion under OCGA § 9-11-60 (d) in the case, a ruling on which would have prompted a right to seek appeal by the discretionary appeal method. The decision does not imply that an appeal from a ruling on such a motion could proceed by direct appeal.

3. *Arnold v. Brundidge Banking Co.*, 209 Ga. App. 278 (433 SE2d 388) (1993), apparently *was* a case in which the creditor employed the streamlined procedure of the Uniform Law, although the opinion states that the creditor "filed an action . . . seeking to domesticate and enforce a judgment obtained" in a foreign state, which would be the traditional procedure. I surmise that it was pursuant to the Uniform Law because the debtor moved to set it aside. Such a motion is a post-judgment motion, not a pre-judgment motion. Under the Uniform Law, the creditor already had its domesticated judgment, by the mere filing of it under OCGA § 9-12-132. I do not know why, or whether actually (it may have been just our interpretation), the trial court "denied (the) motion, domesticated the (foreign) judgment, and entered final judgment in favor of (the creditor)." Id.

The affirmance by this Court was correct, however, because as pointed out, the debtor did not prove, in support of his motion to set aside, that the foreign court lacked personal jurisdiction of him. *Arnold* recognizes that the judgment debtor who seeks to set the judgment aside by motion has an opportunity to present evidence in support of such a motion. Id. at 279.

One other point regarding *Arnold*. The opinion states that "In a motion to set aside a foreign judgment the standard is identical to that of OCGA § 9-11-60 (d). OCGA § 9-12-132." The standard is not "identical"; the motion is made under OCGA § 9-11-60 (d), so the standard *is* the standard applied in such instances. OCGA § 9-12-132 provides that "A filed foreign judgment has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying as a judgment of the court in which it is filed and may be enforced or satisfied in like manner." It does *not* say that the procedures to challenge the judgment are "similar"; the filed foreign judgment simply becomes a domestic judgment and the creditor goes on from there. Any challenge by the debtor must proceed according to the law for challenging domestic judgments. So he would move to set aside for lack of personal jurisdiction just as would a debtor with a default judgment obtained in a Georgia court, such as when the latter was not served with process and did not learn of the judgment until enforcement steps were taken. See *Castellana v. Conyers Toyota*, 200 Ga. App. 161, 162-163 (1) (407 SE2d 64) (1991).

Instead of, and in addition to, moving to set aside in Georgia,

Arnold also had the option of seeking a stay of the enforcement of the judgment while he proved, either in the Georgia court or in the foreign court, lack of the foreign court's personal jurisdiction. OCGA § 9-12-134.

I note that the burden of proving personal jurisdiction in the foreign court, or the lack of it, may be different when the traditional domestication procedure is followed. In *Brown v. U. S. Fid. &c. Co.*, 208 Ga. App. 834, 835 (2) (432 SE2d 256) (1993), the judgment creditor "brought this action to domesticate the default judgment and moved for summary judgment. After a hearing at which appellant argued that the New York court lacked personal jurisdiction over him, [the judgment creditor's] motion for summary judgment was granted." *Brown*. That action was the traditional one, not one under the Uniform Law, which is never mentioned in the opinion. The court stated in Division 2: "When a suit is brought to domesticate a foreign judgment, the judgment may be collaterally attacked on the ground that the foreign court lacked personal jurisdiction over the defendant. *Economou v. Economou*, 196 Ga. App. 196 (1) (395 SE2d 830) (1990). Moreover, if the foreign judgment is a default judgment entered against a nonresident of the foreign state, there is no presumption of personal jurisdiction and the burden is on the plaintiff seeking to domesticate the judgment, in this case appellee [creditor], to negate the defendant's lack of jurisdiction defense. *Atlantic Nat. Bank of Fla. v. Chance*, 194 Ga. App. 634 (391 SE2d 677) (1990)." The debtor raised the defenses by response to the plaintiff/creditor's motion for summary judgment. This Court concluded that the creditor did meet its burden of negating the debtor's "lack of jurisdiction defense" by documentary evidence and affirmed the grant of summary judgment.

4. *Kaylor v. Turner*, 210 Ga. App. 2 (435 SE2d 233) (1993), says it is an "action . . . pursuant to the Uniform Enforcement of Foreign Judgments Act," but then recites that the plaintiffs "filed an action to domesticate the [foreign] judgment in Georgia." Id. at 3. The parties proceeded through the steps for an action brought by the judgment creditors according to the traditional complaint procedure. The judgment debtors set forth defenses, apparently by "answer," including the foreign court's lack of jurisdiction in the revival action. The parties "submitted this case for the trial court's consideration on stipulated facts." Id. The trial court found that the foreign court had personal jurisdiction over the defendants. Id. at 4.

The opinion then goes on to apply the Uniform Law in Division 2, erroneously doing so if this case proceeded below in accordance with the traditional procedure. OCGA § 9-12-132 simply had nothing to do with the action because, as permitted by OCGA § 9-12-136, the judgment creditors had "brought an action to enforce a judgment instead of proceeding under [the Uniform Law]."

Nevertheless, the appeal does not involve a motion to set aside pursuant to OCGA § 9-11-60 (d) which would have to be pursued by the discretionary appeal procedure. Instead, it involves a direct appeal from a trial court judgment which reduced a foreign judgment to a domestic judgment. Consequently, the affirmance of the trial court's judgment is correct.

These, then are my reasons for questioning the disapproval of the four cases for the bases asserted by the majority opinion. Although they are problematic, it is not for the reason they are cited for disapproval in this Okekpe case.

5. OCGA § 5-6-35 (a) (8) requires an appeal from a denial of motion to set aside a judgment under OCGA § 9-11-60 (d) to proceed by way of application under OCGA § 5-6-35 (b). *Jaraysi v. Southern Bell Tel. &c. Co.*, 176 Ga. App. 105 (335 SE2d 463) (1985), followed in *Leader Nat. Ins. Co. v. Martin*, 185 Ga. App. 27, 30 (2) (363 SE2d 281) (1987), which was followed in *Agency Mgmt. Svcs. v. Escape Travel/Tour Svcs.*, 199 Ga. App. 882, 883 (1) (406 SE2d 285) (1991). (*Agency*, unlike *Jaraysi* and *Leader Nat. Ins. Co.*, is a case involving a foreign judgment. In *Agency*, a non-precedential opinion, our court mistakenly states that plaintiff "instituted this action for enforcement of a foreign judgment [the traditional method] . . . pursuant to . . . OCGA § 9-12-130 et seq. [the new method]." Perhaps for that reason the court did not question the appropriateness of a "motion to set aside," which is dealt with in Division 1 of that opinion. *Agency* is right, as far as it goes; it assumes such a motion under OCGA § 9-11-60 (d) is available to attack a foreign judgment filed pursuant to OCGA § 9-12-132 in the first place.)

After plaintiff in this case filed its foreign judgment in the trial court pursuant to OCGA § 9-12-132 and served defendant, the latter filed a "response to motion" contending it "should not be filed" because the foreign court did not have jurisdiction over him and thus the judgment was "fatally flawed." This is a peculiar pleading because the plaintiff had not filed a motion in a pending case but rather simply a foreign judgment; moreover, the filing of the foreign judgment did not lend itself to a "response" from the judgment debtor.

At any rate, plaintiff went along with it instead of moving to strike this "response" and took defendant's deposition, presumably on the question of the foreign court's personal jurisdiction of him.

Thereafter defendant filed a motion "to dismiss plaintiff's complaint" under OCGA § 9-11-12 (b) (2) and (6) *and* OCGA § 9-11-60 (a) on the same ground advanced in the earlier "response," i.e., the foreign court's lack of personal jurisdiction. Of course, OCGA § 9-11-12 (b) (2) (lack of jurisdiction over person) and (6) (failure to state a claim) are totally inapplicable because this Code section only provides a *pre*-judgment procedure. It is inapplicable for the same reason that

summary judgment under OCGA § 9-11-56 is inapplicable in these domestication filings under the Uniform Enforcement of Foreign Judgments Law. See *Eastlawn Corp. v. Bankers Equip. Leasing Co.*, 211 Ga. App. 551, 555 (439 SE2d 753) (1993) (Beasley, P. J., dissenting).

Defendant's other procedural authority, OCGA § 9-11-60 (a), allows collateral attack on a judgment which is "void on its face." It is inapplicable, too, if for no reason other than that the ground of avoidance is lack of personal jurisdiction, which is not shown on the face of the judgment. *Hawkins v. Walker*, 158 Ga. App. 562 (281 SE2d 311) (1981); but see *Murphy v. Murphy*, 263 Ga. 280, 282 (430 SE2d 749) (1993). Defendant is simply wrong when he asserts in his motion that the judgment is void on its face for this reason, in an apparent effort to squeeze his problem into OCGA § 9-11-60 (a) so he can collaterally attack the domesticated foreign judgment. The shoe does not fit.

In addition, there was no "complaint" to dismiss. This is not "an action to enforce a judgment," which is distinguished by OCGA § 9-12-136. It is the mere filing of the foreign judgment in the Georgia court, i.e., domestication, for enforcement here where assets are located.[2]

Nevertheless, the court treated the motion as proper procedurally, found as fact that the foreign court had had personal jurisdiction of defendant when it rendered the foreign judgment against him, and denied the "motion to dismiss." Thus the *issue* of the foreign court's personal jurisdiction was tried and decided in Georgia, not in the state in which the judgment was rendered, and plaintiff relied on the foreign state's law to prove it.

Although the trial court did not characterize the motion as one authorized by OCGA § 9-11-60 (d) (1), the majority does so. Having made such a characterization, of course an application for discretionary appeal is required. OCGA § 5-6-35 (a) (8). Is such a motion available to attack a foreign judgment filed pursuant to OCGA § 9-12-132?

That Code section, which provides for the filing, force and effect following filing of a foreign judgment, states that the clerk shall treat it as one of its own judgments and that once filed, the judgment "has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, staying, enforcing, or satisfying as a judgment of the court in which it is filed and may be enforced or satisfied in like manner." The question is whether the same methods for obtaining relief from a Georgia judgment are available to the judgment debtor who seeks relief from a domesticated foreign judgment.

---

[2] Although the form provided by the clerk's office for the filing of such judgments is erroneously styled "Suit for Enforcement of Foreign Judgment," the body of the form and its manner of utilization clearly establish that the Uniform Law was invoked.

Specifically, can he move to set it aside under OCGA § 9-11-60 (d) (1)?

It appears that OCGA § 9-12-132 intends the answer to be "yes." But a judgment may only be attacked directly under OCGA § 9-11-60 (b), unless it is void on its face, which this one is not. There are two methods for directly attacking a judgment; one is by motion for new trial and the other is by motion to set aside. OCGA § 9-11-60 (b). Complaints in equity are no longer available to obtain relief from judgments. OCGA § 9-11-60 (e).

I cannot imagine that we would allow a motion for new trial to be used to attack the domesticated foreign judgment. For one thing, we would be usurping the foreign court's power over its own judgments. For another, we would be reviewing pleadings and transcripts from foreign courts to see if they erred under their law. For a third, what would be the consequences of our grant of a new trial? Would the foreign court have to accept our ruling that a new trial be held? I should hope not. It is obvious to me that the broad range given by OCGA § 9-12-132 to filed foreign judgments does not intend to include a direct attack by way of a motion for new trial.

What about a motion to set aside, as the majority opinion categorizes the motion in this case? Like the motion for new trial, it may be filed "only in the court of rendition." OCGA § 9-11-60 (b). Does the filing of the foreign judgment in Georgia qualify the Georgia court as "the court of rendition" because now it is a Georgia judgment? That is precisely what is intended by OCGA § 9-12-132, after Georgia has given the foreign judgment "full faith and credit" by its filing. OCGA § 9-12-131.

This is so even though the Georgia court in which it is filed does not "render" any judgment at all; nothing in the Uniform Law contemplates such. Instead, the foreign judgment itself is acted upon. With respect to it, it would appear that there cannot be two courts of rendition, and the fact that it is filed in Georgia does not eliminate the foreign court as the court rendering the judgment. However, for purposes of enforcement *in Georgia*, though not elsewhere, the Georgia court is considered a court of rendition in OCGA § 9-11-60 (d). The effect, in the foreign state, of a Georgia court's setting aside the domesticated judgment would only affect its enforceability here. For that reason, the judgment debtor may want to take advantage of a stay proceeding, as authorized in OCGA § 9-12-134, and have the root judgment set aside so it cannot be domesticated anywhere, wherever the judgment debtor has assets. It is noted that OCGA § 9-12-132 allows "defenses" but does not say "attacks," the language of OCGA § 9-11-60, but that would appear to be inconsequential.

I am afraid we have mixed up the two proceedings and now must unravel the snarled strand. We must return to the light of *Hammette*

*v. Eickemeyer*, 203 Ga. App. 243 (416 SE2d 824) (1992), which is quoted in the dissent in *Eastlawn Corp. v. Bankers Equip. Leasing Co.*, supra. I may have erred in the *Eastlawn* dissent when I stated that the procedure used in the trial court in *Signet Bank/Va. v. Tillis*, 196 Ga. App. 433 (396 SE2d 54) (1990), was "improper." Although the Uniform Law was available to the judgment creditor in that case, since it sought domestication after 1986, it may have chosen the traditional procedure of filing a complaint to domesticate, as permitted by OCGA § 9-12-136. At any rate, there was an answer and, thereafter, the plaintiff's motion for summary judgment. I am correct in *Eastlawn* about *Signet*, if the action in *Signet* started out under the Uniform Law.

The *Eastlawn* dissent is correct in pointing out that summary judgment is not available in these instances and that the Uniform Act expedites the recognition and enforcement of foreign judgments so that judgment creditors are not faced with two successive lawsuits in different states in order to collect on one debt.

*Hammette* recognized that one of the judgment debtor's recourses is a stay of enforcement under OCGA § 9-12-134. Subsection (b) would allow it in this instance so the judgment debtor could move to set aside the foreign judgment in the foreign state, in "the court of rendition" of the root judgment, under the foreign state's rule comparable to OCGA § 9-11-60 (d). *Hammette* held that a counterclaim was not allowable against a Uniform Act filing.

DECIDED SEPTEMBER 22, 1995 —
RECONSIDERATION DENIED OCTOBER 12, 1995.

*Giddens, Davidson & Mitchell, Earl A. Davidson, Kenneth Mitchell*, for appellant.

*Stokes, Lazarus & Carmichael, Marion B. Stokes, Derek W. Johanson, Lane R. Frostbaum*, for appellee.